UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MELANIE LURA SMITH,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-470
(TJM/VEB)

## I. INTRODUCTION

In February of 2004, Plaintiff Melanie Lura Smith filed an application for supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since September of 1995 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorney, Irwin M. Portnoy, Esq., commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on February 10, 2004. (T at 80-82).[1] The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held over the course of four (4) non-consecutive days before ALJ Carl E. Stephan. (T at 436-518). Plaintiff appeared pro se (waiving her right to counsel) and testified on Mach 20, 2006. (T at 436-455). Thereafter, Plaintiff appeared with counsel and testified further on June 27, 2006. (T at 456-468). On October 25, 2006, Plaintiff testified a third time with counsel present. (T at 469-485). Testimony was taken from Plaintiff's father on that same date. (T at 485-489). On April 18, 2007, Plaintiff appeared a fourth time and testified with counsel present. (T at 490-501). Testimony was also received from a vocational expert. (T at 502-518).

On April 27, 2007, ALJ Stephan issued a written decision denying Plaintiff's application. (T at 18-27). The ALJ's decision became the Commissioner's final decision on March 18, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 3-5).

Plaintiff, through counsel, timely commenced this action on April 22, 2009. (Docket No. 1). The Commissioner interposed an Answer on August 4, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on August 24, 2009. (Docket No. 11). The Commissioner filed a Brief in opposition on October 5, 2009. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 10, 2004, the date she filed her application for benefits. (T at 21). The ALJ concluded that Plaintiff suffers from a severe mental impairment, secondary to depression, anxiety, and a personality disorder. (T at 24).  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the

---

substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

"Listings"). (T at 24).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform simple, entry-level medium work activity, in a low stress setting, with limited contact or interaction with others, and where there was no need to read reports or make more than simple decisions relating to rote entry-level tasks. (T at 26). He further found that Plaintiff had no past relevant work experience, was 27 years old, and had a fifth-grade education. (T at 26). Considering Plaintiff's age, work experience, residual functional capacity, and the testimony of the vocational expert regarding a hypothetical claimant with Plaintiff's residual functional capacity and vocational background, the ALJ concluded that the framework of Rule 203.25 of Appendix 2, Subpart P of Social Security Regulations No. 4 required a finding of "not disabled." (T at 26).

Accordingly, the ALJ found that Plaintiff had not been under a disability between February 10, 2004, the alleged onset date, and April 27, 2007, the date of his decision. (T at 26-27). As noted above, the ALJ's decision became the Commissioner's final decision on March 18, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 3-5).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. She offers seven (7) principal arguments in support of that position, which may be summarized as follows: First, the ALJ improperly relied upon Plaintiff's apparent failure to follow prescribed treatment. Second, the ALJ erred by not considering the cumulative effects of Plaintiff's mental and physical impairments. Third, the ALJ did not properly evaluate the opinions provided by Plaintiff's treating psychiatrist and a consultative examiner. Fourth, the ALJ

should have concluded that Plaintiff's impairments met or medically equaled a listed impairment. Fifth, the ALJ erred in evaluating Plaintiff's credibility. Sixth, the ALJ did not properly assess Plaintiff's residual functional capacity. Seventh, the ALJ's reliance on the vocational expert's testimony was misplaced.

### a. Non-Compliance with Treatment

Plaintiff's first six arguments are rooted in the proposition that the ALJ improperly evaluated Plaintiff's non-compliance with treatment. It is undisputed that Plaintiff has a clear and sustained pattern of non-compliance with treatment. Plaintiff's history of psychiatric care began at age 11 (in or about 1990) with a referral from the Department of Social Services in connection with a sexual abuse case. (T at 293). Plaintiff was diagnosed with Post-Traumatic Stress Disorder, but the case was closed after only 5 months, apparently for non-compliance with treatment. (T at 294).

Plaintiff's case was reopened in 1999, but then closed due to inconsistent attendance, failure to take prescribed medication, and failure to consistently attend group therapy. (T at 294). The case was reopened later that same year for a period of approximately 4 months, with Plaintiff mandated to attend therapy by a Family Court order, but the case was then closed for non-compliance. Plaintiff's case was reopened yet again in 2001, only to be closed for attendance failures. (T at 294). The records indicate that Plaintiff's case was reopened and then closed in 2005 for the same reason. (T at 294).

In a February 2006 assessment, Dr. Ron Goldman of the Ulster County Mental Health Department, Plaintiff's treating psychiatrist, noted Plaintiff's "history of having her case closed multiple times over the last few years for non-compliance/poor attendance." (T at 277). Dr. Goldman also added the following note: "[Plaintiff] has <u>never completed</u> a

7

full trial of therapy <u>and</u> medication treatment.  <u>Duration</u> of any impairment in work related abilities is difficult to evaluate as she may respond to medication and psychotherapy." (T at 280)(emphasis in original).

In general, a claimant's failure to follow prescribed treatment may be relevant to a claim for SSI benefits in two ways:

First, non-compliance with prescribed medical treatment can be a basis for denial of benefits if the claimant is disabled solely because he or she fails to follow prescribed treatment. See 20 C.F.R. § 416.930; Feliciano v. Barnhart, No. 01 CV 5099, 2002 WL 32096586, at *3 (E.D.N.Y. July 1, 2002)("The SSA Regulations provide that a claimant who fails to follow prescribed medical treatment which would restore her ability to work is typically ineligible for SSI benefits.") (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) ("a remediable impairment is not disabling")); SSR 82-59.

This rule is applicable where the Commissioner has first determined that the claimant is disabled and only when the Commissioner finds that the claimant's disability would be remediated but for the claimant's unjustified non-compliance with treatment.  In other words, "a claimant may only be denied disability benefits if the Secretary finds that she unjustifiably failed to follow prescribed treatment and that if she had followed the treatment, she would not be disabled under the Act." McFadden v. Barnhart, No. 94 Civ. 8734, 2003 WL 1483444, at *8 (S.D.N.Y. Mar. 21, 2003).

SSR 82-59 provides, in pertinent part, that the treatment at issue must have actually been "prescribed" by a treating physician.  In addition, the claimant must "be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment."  Moreover, the ALJ must advise the claimant that "the information supplied will

be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits."  The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, *e.g.* religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82-59; see also Grubb v. Apfel, No. 98-CIV-9032, 2003 WL 23009266, at *4-*8 (S.D.N.Y. Dec. 22, 2003).

If the Commissioner finds that the claimant is not disabled in the first instance, then 20 C.F.R. § 416.930 does not apply. If, however, the Commissioner considers the claimant's non-compliance with treatment when evaluating the claimant's credibility, a different rule applies.  To wit, SSR 96-7p provides, in pertinent part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed."

Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

In the present case, the ALJ noted Plaintiff's history of non-compliance with treatment and made the following finding: "Seemingly, if the claimant were suffering from the degree of mental disability alleged, she would routinely comply with treatment recommendations, including therapy and medication." (T at 24).  The ALJ then discounted Plaintiff's credibility, apparently based upon her "seemingly" unexcused non-compliance with treatment.  (T at 24).

Later in his decision, the ALJ referenced 20 CFR § 416.930 (the regulation that provides for denial of benefits based upon non-compliance), but explained that he was "interpreting the evidence in a light most favorable to the claimant" and, as such, "assum[ing] that the claimant's mental limitations, both psychiatric and cognitive, are the basis of her non-compliance." (T at 25).

This assumption fatally undermines the credibility assessment the ALJ made earlier in his decision. In other words, having first discounted Plaintiff's credibility based upon a suggestion of malingering (or, at least, a suggestion that Plaintiff exaggerated the extent of her impairments) as evidenced by her non-compliance with treatment, the ALJ then assumed that Plaintiff's non-compliance had a legitimate psychological and/or cognitive cause. The ALJ made no attempt to reconcile this contradiction, which calls his credibility determination into serious question.

Moreover, if Plaintiff's inability to follow treatment recommendations (e.g. keeping psychiatric appointments) was caused by her psychiatric and cognitive impairments (as the ALJ assumed), that would suggest a like limitation with regard to the ability to maintain a regular work schedule, a basic work activity and necessary part of a residual functional capacity ("RFC") assessment. Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999)(noting that an RFC determination requires an assessment as to the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the . . . assessment must include a discussion of the individual's abilities on that basis." . . . "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

In addition, the evidence in the record undermines the ALJ's assumption in the

context of his credibility determination that Plaintiff's failure to comply was evidence of malingering and supports the assumption the ALJ later made that the non-compliance was, in fact, evidence of serious psychiatric and/or cognitive limitations.

Dr. Gindes, the consultative examiner, noted that Plaintiff was "not likely" to maintain a regular schedule or make appropriate decisions. (T at 253). According to Dr. Gindes, these symptoms were caused by "chronic depression, character pathology, and cognitive deficits." (T at 253). Dr. Goldman's February 2006 report indicated that Plaintiff was "genuinely putting forth effort to engage in treatment." (T at 277). Treatment notes from Vicki O'Neill, a social worker who provided counseling to Plaintiff, demonstrated that although Plaintiff frequently missed appointments without explanation, she also called to cancel appointments on numerous occasions, citing her various health problems and rather chaotic family circumstances. (T at 217, 220, 221, 224, 226, 227, 229, 230). This suggests that Plaintiff recognized the need for treatment and wishes to maintain her treating relationship, but was unable to do so for health, family, or other reasons (or, more likely, a combination thereof).

If the ALJ believed that Plaintiff's non-compliance with treatment "[s]eemingly" suggested that her symptoms were not as severe as she claimed, he could have readily sought additional information on that issue by contacting Dr. Goldman and/or Ms. O'Neill to solicit their opinion(s) as to why Plaintiff failed to keep her appointments. In addition, the ALJ could also have asked Plaintiff to explain why she did not comply with treatment. Instead, a significant portion of the Plaintiff's hearing testimony (which took place over 4 days) was consumed by the ALJ's quest to determine whether Plaintiff's education ended in the fifth grade or at a later time. The ALJ questioned Plaintiff very briefly about her

psychiatric treatment (T at 446-450), but did not ask her to explain her non-compliance and did not return to the subject.

Accordingly, this Court finds that remand is necessary for further development of the record. On remand, the ALJ should, as a threshold matter, clarify the contradiction outlined above, and reconsider Plaintiff's credibility on that basis. In that context, the ALJ should give strong consideration to re-contacting Dr. Goldman and/or Ms. O'Neill and Plaintiff should be afforded an opportunity to explain her non-compliance with treatment. In addition, given Plaintiff's recognized cognitive limitations and very limited (fifth grade) education (T at 25, 252-53),[4] the ALJ should give strong consideration as to whether testing of Plaintiff's IQ and/or literacy is warranted. See Dixie v. Comm'r of Soc. Sec., 2008 WL 2433705, at *6 (N.D.N.Y. June 12, 2008) (remanding for development of the record on the issue of illiteracy despite IQ testing already in the record); see also 20 C.F.R. §§ 404.1512(f); 416.912(f) (noting that if information is not readily available from a claimant's records a consultative examination may be ordered).

    **b.**    **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing

---

[4] The consultative examiner noted "limited intellectual functioning," difficulties with "simple calculations and serial 3s," and cognitive functioning "in a range between borderline and deficient, with limited general fund of information." (T at 253). ("Serial 3s" involves counting by threes).

12

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ concluded that Plaintiff retained the RFC to perform "simple, entry-level medium work activity in a low stress setting where there is limited contact or interaction with others and where there is no need to read reports or make more than simple decisions relating to rote entry-level tasks." (T at 26). This Court finds that the ALJ's conclusion is not supported by substantial evidence.

As noted above, a necessary part of an RFC determination is an assessment as to whether the claimant can perform basic work-related activities "on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." Melville, 198 F.3d at 52. Dr. Gindes, the consultative examiner, opined that Plaintiff was "not likely to maintain a regular schedule," "make appropriate decisions," or "appropriately deal with stress." (T at 253).

Dr. Goldman assigned a Global Assessment Functioning ("GAF") score of 45. (T at 297). The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004). "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard, 377 F.3d at 186

n.1; see also Hall v. Astrue, 677 F. Supp.2d 617, 622 n.3 (W.D.N.Y. 2009)("A GAF score of 50 or lower suggests a 'serious impairment' in the level of functioning.")(quoting Garcia v. Commissioner of Social Security, 496 F.Supp.2d 235, 238 (E.D.N.Y.2007))

The ALJ himself found some basis to conclude that Plaintiff's failure to keep psychiatric appointments (which is evidence of an inability to maintain a schedule on a regular and continuing basis) was based upon her psychiatric and cognitive impairments. (T at 25).

The ALJ's conclusion that Plaintiff's RFC limited her to a "low stress" job does not save his analysis. "Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." Stadler v. Barnhart. 464 F. Supp.2d 183, 189, 464 F.Supp.2d 183 (W.D.N.Y. 2006)(citing SSR 85-15; Welch v. Chater, 923 F.Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments")). The ALJ did not make sufficient findings concerning Plaintiff's particularized ability to deal with stress, other than to generically conclude that she was limited to "low stress" work.

The ALJ also used a selective approach to the medical record when justifying his decision. For example, the ALJ cited Dr. Goldman's finding that Plaintiff had no limitations with regard to understanding, remembering, and carrying out short, simple instructions (T at 277) in support of his RFC determination. (T at 25). The ALJ also noted Dr. Goldman's conclusion that Plaintiff had moderate limitations with regard to interacting appropriately

with the public. (T at 278).

However, the ALJ did not account for Dr. Goldman's finding that Plaintiff had only recently demonstrated an ability to schedule and keep her appointments. (T at 277). Further, the ALJ did not adequately address Dr. Goldman's assessment that Plaintiff's combination of psychiatric and physical impairments was "likely to impact" upon Plaintiff's "ability to work in general and interact with others in particular." (T at 278).

Dr. Goldman also opined that it was "difficult to imagine [Plaintiff] being able to hold down even a part-time job at this time." (T at 279). Although the ultimate disability determination is reserved to the Commissioner, it is noteworthy that Plaintiff's treating psychiatrist found that her inability to cope with "adult demands," "difficulties with trust," and high levels of anxiety would prevent her from performing work on a limited basis. At a minimum, the ALJ was obliged to address these findings, explain what weight (if any) he was assigning to them, and state his reasons for discounting Dr. Goldman's opinion. This is particularly so because Dr. Goldman's assessment was supported by the findings of the consultative examiner, who indicated that Plaintiff was not likely to maintain attention and concentration, appropriately deal with stress, maintain a regular schedule, learn new tasks, or make appropriate decisions. (T at 253).

As a treating provider, Dr. Goldman's assessment was presumptively entitled to controlling weight, a fact the ALJ appears not to have adequately considered.[5] On remand,

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Under the rule, the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

the ALJ should revisit his RFC determination and reconsider Dr. Goldman's assessment in light of the concerns outlined above.

### c.      Hypotheticals Presented to Vocational Expert

Whether a hypothetical given to a vocational expert is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

In this case, the ALJ solicited testimony from Esparanza DiStefano, a vocational expert (the "VE"). The ALJ presented the VE with a hypothetical claimant and described the claimant's functional limitations and vocational background. The ALJ relied upon the VE's answer in reaching his decision that a person with Plaintiff's RFC and vocational background could perform the following jobs: kitchen helper, hospital cleaner, mail clerk, messenger, and housekeeper. (T at 26).

However, the ALJ's hypothetical contained assumptions not supported by substantial evidence. For example, the ALJ asked the VE about an individual that had "some problems with stress" (T at 504). The evidence from Plaintiff's treating psychiatrist and the

---

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

consultative examiner indicated significant problems dealing with stress and anxiety, impacting on Plaintiff's ability to work to a degree much greater than suggested by the phrase "some problems with stress." (T at 278, 253).

Moreover, the ALJ's hypothetical did not mention an ability to maintain a regular work schedule.  By failing to do so the ALJ left to the VE the opportunity to assume that the Plaintiff was able to maintain such a schedule.  For the reasons set forth in detail above, such an assumption would not be supported by substantial evidence.  This is a material omission, given that the VE acknowledged on cross-examination that an inability to attend to a regular schedule in a job setting "would certainly impact" the claimant's "ability to maintain the job because . . . excessive absenteeism or inability to attend a regular schedule would impact . . . employment retention." (T at 511).  On remand, the VE should be presented with a hypothetical that encompasses Plaintiff's limitations with regard to stress and the ability to maintain a regular schedule.

   **3. Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this

Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   November 4, 2011
        Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
November 4, 2011

Victor E. Bianchini
United States Magistrate Judge

19